MURPHEY *v.* LOWRY, sheriff.

No. 9719.   DECEMBER 29, 1933.

*George G. Finch,* for plaintiff.

*John S. McClelland, solicitor, John A. Boykin, solicitor-general, J. W. LeCraw,* and *I. Leonard Crawford,* for defendant.

BELL, J.   Mrs. Mattie Murphey filed a petition against J. I. Lowry, sheriff of Fulton County, for the writ of habeas corpus. She alleged that on November 8, 1932, on accusation No. 116,781, a copy of which was attached to the petition as Exhibit A, she was sentenced in the criminal court of Atlanta to serve a period of three months, "to be computed in accordance with the act approved August 27, 1931," and that she was also at the same time and in the same court sentenced for a term of three months each on four other accusations numbered 116,782 to 116,785 repectively.   The petition alleged that she began executing the sentences in accordance with the act of 1931, and that her term of service expired on February 8, 1933, which was three months after the date of the first sentence.   The petition also averred that her restraint and detention is and has been illegal from and after that date.   Copies of all of the five accusations with the sentences entered thereon were attached to the petition as exhibits, and each of the sentences except the first stated in effect that the term of service thereunder was to follow the term imposed in the next previous sentence.   It appears from the record that the defendant pleaded guilty in each case, and that she was incarcerated at the time these sentences were imposed.   She therefore contends that each sentence should be computed from that date, and that the sentences ran concurrently and not consecutively.   The respondent denied the illegality of the plaintiff's detention.   The case was tried before the judge on the pleadings, there being no issue of fact; and he passed an order refusing the writ.   To this judgment the petitioner excepted.

The act approved August 27, 1931 (Ga. L. 1931, p. 165), provides that "it shall be the duty of the several judges of this State, in the imposition of sentence for violation of the penal laws of the State, to specify that the term of service, under such sentence, shall be computed as from the date of sentence, provided, the defendant is confined in jail or otherwise incarcerated, and has no appeal or motion for new trial pending, except in such cases as may be appealed to the State Court of Appeals, or the Supreme Court, for reversal of the conviction, in which event the sentence shall be computed from the date the remittitur of the appellate court is made the judgment of the court in which the conviction is had, provided the defendant is not at liberty under bond, but is incarcerated or in the custody of the sheriff of the county where convicted."

Section 1067 of the Penal Code provides as follows: "Where a person shall be prosecuted and convicted on more than one indictment, and the sentences are imprisonment in the penitentiary, such sentences shall be severally executed, the one after the expiration of the other; and the judge shall specify in each the time when the imprisonment shall commence and the length of its duration." This section refers to felony cases only, but in misdemeanor cases the court may also provide that the terms shall be served consecutively. *Fortson* v. *Elbert County,* 117 *Ga.* 149 (43 S. E. 492) ; *Simmons* v. *Georgia Iron & Coal Co.,* 117 *Ga.* 305 (8) (43 S. E. 780, 61 L. R. A. 739) ; *Shamblin* v. *Penn,* 148 *Ga.* 592 (97 S. E. 520) ; *Sullivan* v. *Clark,* 156 *Ga.* 706 (119 S. E. 913). In the Penal Code (1910), § 1081, it is provided that a person convicted of a felony "shall, as soon as possible after conviction, together with a copy of the record of his conviction and sentence, be safely conveyed to the penitentiary by a guard to be sent therefrom for that purpose, and therein be safely kept *during the term specified in the sentence of the court.*" (Italics ours.) See also, in this connection, *Neal* v. *State,* 104 *Ga.* 509 (2) (30 S. E. 858, 42 L. R. A. 190, 69 Am. St. R. 175) ; *Daniel* v. *Persons,* 137 *Ga.* 826 (74 S. E. 260) ; *Avery* v. *State,* 22 *Ga. App.* 746 (3) (97 S. E. 204).

Was the act of 1931 intended to repeal or supersede the law conferring upon the courts the power to cause sentences to be served consecutively? It is the opinion of this court that the legislature did not so intend. The cardinal rule for the construction of

statutes is to determine the intention of the legislature, and for this purpose to keep in view at all times "the old law, the evil, and the remedy." Civil Code (1910), § 4, par. 9. Having stated the old law, we should next consider the evil sought to be remedied by the new law. It is a matter of judicial knowledge that in some cases prisoners after conviction may for one reason or another be allowed to remain in jail for a considerable time before delivery into the penitentiary or the chain-gang, and that notwithstanding this fact the terms of service are computed from the date of such delivery, with no credit for the time of lying in jail in the meanwhile. The legislature evidently deemed this practice to be unfair as to a defendant confined in jail or otherwise incarcerated and who is not responsible for the continuation of such imprisonment after conviction. It is our opinion that this, and this alone, was the evil sought to be remedied by the act of 1931.

Since the act refers, in the singular, to "the imposition of sentence," it would seem that only one or an initial sentence was in contemplation by the legislature, and that in case of a plurality of sentences only the first was intended to be affected by the statute. There is nothing whatever to show an intention to repeal the existing laws to the effect that sentences may be ordered to run consecutively. Under the construction sought by the plaintiff, a person might commit any number of crimes involving service in the penitentiary or chain-gang, and yet his servitude could not be longer for the whole than for a single offense, unless, forsooth, the court should dispose of all the cases after the first only in such order that the defendant would not be tried in any case until after the execution of his sentence in the next previous case, in the event of convictions. In the meantime witnesses might become inaccessible, with a resulting miscarriage of justice. If a prisoner should escape from the penitentiary or chain-gang, he might never be required actually to serve a sentence for the offense of escape, unless the trial for that offense should be postponed until the termination of the sentence from which he had fled. Let us suppose again that a person has been convicted of any offense punishable by imprisonment in the penitentiary, assault with intent to murder for instance, and is sentenced to a minimum of five years. On the very day of his entry into the penitentiary he endeavors to escape and in so doing again commits the offense of assault with intent to murder

by attempting to kill a guard. He is immediately tried for the latter crime, and again receives a minimum sentence of five years. If the position taken by counsel for the plaintiff is correct, practically no additional punishment could be imposed, but the sentences must run concurrently and the prisoner be wholly discharged after the expiration of five years, plus perhaps a brief period representing the time which may intervene between the two sentences. This would be the only possible legal result, unless the court should defer trial for the second offense until the expiration of the sentence for the prior offense, with the usual possibility of a failure of justice by reason of such delay,—except that the act of 1931 may be inapplicable to sentences imposed in different courts. Cf. *Hightower* v. *Hollis,* 121 *Ga.* 159 (48 S. E. 969). Other illustrations might be given ad infinitum. Certainly the legislature did not intend to complicate the criminal laws in this fashion. If it should be said that the court might proceed with trials in the usual order, but defer passing sentence from time to time, and thereby avoid the application of the statute, even this procedure would involve a great inconvenience and burden upon the court, and such was not reasonably in contemplation of the legislature.

There is still another view from which it is equally if not more apparent that it was not intended to repeal the existing rule as to consecutive sentences. By the specific language of the act it is made to apply only to cases in which the defendant is confined in jail or is otherwise in legal custody. If a man is in jail he may be powerless to get out; but if he is out of jail and on bond, he can usually get in, as by surrendering himself for that purpose. If on bond, he can not under any interpretation invoke the act in order to obtain a concurrent execution of sentences; but if the position taken by the plaintiff is correct, any defendant may actually force such a result merely by surrendering himself at any time ·before sentence, or at least before trial or plea of guilty. Assuredly it was not the intention of the legislature to cause such a vast difference in punishment to be dependent solely upon the question of whether the defendant is incarcerated, or to leave this important matter to his mere election as to whether he will surrender himself to custody and demand concurrent execution. It would seem an absurdity to say that a defendant may control the judgments or even the procedure of the court by his own absolute will and act, regardless of all

other circumstances. We repeat that under a rational construction of the statute its sole purpose was to give a defendant credit for time involuntarily spent in jail after sentence, which was theretofore not allowed unless by special order, the sentence itself in case of one and the initial sentence in case of several usually providing in effect that the term should be computed from the date of entry into the penal institution. If this is not the true interpretation, it is then an impenetrable mystery why the legislature should have made the act apply to jail cases only. As a matter of fact there is no mystery at all, but the meaning of the act is clear enough when the proper rules of construction are duly applied. Laws may of course be repealed by implication, but such repeals are not favored, and there was here no repeal such as was claimed by the petitioner.

It was perfectly lawful that the sentences in question were made to run consecutively, and there was no merit in the application for the writ of habeas corpus.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent, and Hill, J., absent for providential cause.*